# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GFSI, INC. D/B/A/ GEAR FOR SPORTS, INC., <br><br> *Plaintiff*, <br><br> vs. <br><br> COMFORT KNITWEARS (PVT), LTD., <br><br> *Defendant.* | Case No. 09-2384-EFM |

## MEMORANDUM AND ORDER

This involves a dispute over allegedly non-conforming goods between a company whose principal place of business is in Kansas and a business incorporated and located in Pakistan. Defendant seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(2) and (3). Before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens (Doc. 11). The motion has been fully briefed. For the following reasons, the Court grants the motion.

## I. Factual and Procedural Background[1]

GFSI, Inc. d/b/a Gear For Sports, Inc. ("GFSI") is a Delaware corporation with its principal place of business in Lenexa, Kansas. Defendant Comfort Knitwears (PVT), Ltd. ("Comfort") is a Pakistani Limited Liability Company with its principal place of business and only office in Lahore,

---

[1]The following facts are taken from Plaintiff's complaint, the affidavits attached to Defendant's motion to dismiss, and the affidavits attached to Plaintiff's response to Defendant's motion to dismiss.

Pakistan.² Comfort has no offices in Kansas or in any state in the United States; does not solicit business in Kansas; does not have a local office or agents in Kansas; does not send agents into Kansas to solicit business on a regular basis; does not enter into any business contracts in Kansas; does not solicit advertisement listings in Kansas; and has no bank accounts in Kansas.

In March of 2007, GFSI was evaluating vendors to produce apparel. Thomas Sosa, GFSI's country manager for GFSI in India, first met with Asher Khurram whose family owns "Comfort" and a number of affiliated companies in Pakistan. In April 2007, Bill Ramsey, GFSI's Senior Director of Sourcing, and Roland Medrano, GFSI's Senior Vice President, Supply Chain, traveled from their headquarters in Lenexa, Kansas to Asia. On April 18, 2007, both men flew to Lahore, Pakistan to visit the Comfort facilities with Sosa. Once in Lahore, they met with Khurram, who identified himself as Director of Operations for Comfort. At the initial meeting, Khurram told Ramsey and Medrano that the Comfort Group of companies operated over 6 facilities, which as a whole processed 500,000 to 600,000 garments per month. Ramsey states that Khurram presented Comfort Knitwears, Zulfiqar Knitting and Processing Mills a/k/a Z-Kap, and Asher Imran Knitting Mills as integrated facilities of "Comfort" and being vertically integrated, they could handle all of GFSI's project.

Ramsey of GFSI was pleased with the facility and believed that Comfort might be able to provide merchandise for a program which GFSI was discussing with Kohl's department store. On September 20, 2007, GFSI, from its Kansas headquarters, placed a salesmen sample purchase order

---

²Both parties refer to Comfort Knitwears as "Comfort," so the Court will do the same. Plaintiff, however, states that it believes that there is a "Comfort family of companies" which includes Zulfiqar Knitting and Processing Mills a/k/a Z-Kap. Several times, Plaintiff uses the term "Comfort" to refer to Zulfiqar and not specifically to Comfort Knitwears. There are no allegations against Zulfiqar in the Complaint, and only Comfort Knitwears is a named defendant in this lawsuit. In the affidavits attached to the briefing of this motion, the parties discuss Zulfiqar. The Court will attempt to identify the specific entity in question throughout this Order.

with Comfort for about 1,100 pieces. Comfort specifically requested this purchase order to be addressed to Zulfiqar. On or about December 15, 2007, Zulfiqar delivered the garments produced pursuant to the sample purchase order to GFSI at its Kansas headquarters for inspection. Upon receiving the samples, GFSI made payment by wire transfer from its bank in Kansas to Comfort.

On January 3, 2008, Khurram sent Ramsey an email advising him that Comfort was proceeding with fabric commitments for the bulk order. On February 15, 2008, Ramsey placed an order with Comfort from his offices at GFSI headquarters in Kansas and issued Purchase Order #154173 for 97,536 garments. This purchase order was addressed to Comfort Knitwears Ltd.

In February of 2008, as the purchase order was being issued, GFSI forwarded to Khurram, as principal of Comfort, its Master Terms and Conditions Agreement which GFSI uses instead of a detailed purchase order to define the responsibilities of the parties. In this agreement, it states that "[t]his Agreement is entered into this 27 day of March, 2008, by and between Gear for Sports, Inc. ("Purchaser") and Zulfiqar Knitting & Processing Mills (Pvt) Ltd. (aka Comfort Kniting) ("Vendor").³ Khurram executed the agreement under title of Director of Zulfiqar Knitting &

---

³Paragraph 24 of the Agreement states:
Arbitration and Choice of Law and Venue.
These terms and conditions (including this section) shall be governed and construed in accordance with the laws of the State of Kansas without respect to the conflict of law principles thereof.
All claims, demands, disputes, controversies, differences or misunderstandings (hereinafter referred to collectively as "Controversies") between or among the parties hereto, or any persons bound hereby, arising out of or by virtue of the Agreement, shall be submitted to an determined by binding arbitration. If the parties are unable to agree on an arbitrator or arbitrators within twenty (20) calendar days after any party shall have requested arbitration, then, and in such event, the American Arbitration Association shall be designated by any party to appoint an arbitrator and to arbitrate the matter under its current commercial arbitration rules, such arbitration to be conducted in the English language in Kansas City, Kansas, United States of America. The award of the arbitrators or the arbitrator appointed by said Association shall be made in writing, shall be binding and conclusive on all parties, shall not be appealable and shall include a finding for the payment of the costs of such arbitration. It is further agreed that judgment of any court of competent jurisdiction may be entered upon the award.
Without limiting the express intent of the foregoing paragraph to resolve all Controversies concerning this Agreement through binding arbitration, should any party in contravention of the foregoing paragraph seek any judicial relief in connection with any Controversies arising out of this Agreement, both parties submit themselves solely to the personal jurisdiction of the Courts of the State of Kansas and they expressly agree that the exclusive jurisdiction of any dispute regarding these Terms and Conditions and any Controversies arising hereunder shall be in the courts of the State

Processing Mills (Pvt) Ltd.

For the purchase order, Comfort was required to embroider various college logos and related proprietary art work on the fleece ware. Comfort accessed the applicable designs and other software on GFSI's main frame computer at its headquarters in Lenexa, Kansas. During March, April, and May 2008, GFSI received sample embroidery sew-outs for artwork approval in its Kansas headquarters from Comfort. GFSI inspected and approved these samples. Comfort then proceeded to make the goods. As required by Comfort, immediately upon notification of shipping, GFSI paid Comfort's invoices in full, Free on Board, Pakistan, via transfers from GFSI's bank in Kansas which were funded by a letter of credit issued from GFSI's bank in Kansas to the benefit of Comfort Knitwear in Lahore, Pakistan.

Because they were behind schedule, GFSI's independent agent in Lahore, Rasool Shafqut, was only able to randomly inspect a small portion of the garments before they were shipped to GFSI. As a result of this inadequate inspection, GFSI was not aware that the goods were defective and non-conforming until they arrived at the warehouse in California. Between June 23, 2008 and July 10, 2008, Comfort shipped the merchandise to GFSI's Los Angeles warehouse where inspectors discovered quality issues.

The quality defects were significant, and Comfort was timely notified of these quality issues by email from Ramsey to Khurram. Based upon quality issues, GFSI was unable to ship this product to Kohl's immediately and instead was required to hire an outside service to inspect each piece. The

---

of Kansas, Johnson County, including the appropriate United States District Court. Service of process in any judicial action arising out of a Controversy concerning these Terms and Conditions may be by certified mail return receipt requested or by personal service or in such other manner as may be permissible under the rules of the applicable court, provided a reasonable time for appearance is allowed.
      Paragraph 28 provides that any notice required by the Agreement shall be addressed to: Zulfiqar Knitting & Processing Mills (Pvt) Ltd., 156-Industrial Area, Kotlakhpat, Township, Lahore - Pakistan.

inspection was completed on August 8, 2008, and 24,976 garments were found to be unacceptable. On August 15, 2008, Khurram traveled to the Los Angeles warehouse to inspect the goods himself. Khurram offered to remake a small portion of the defective goods, but this could not cure the situation as it was already too late to ship additional goods to Kohl's to complete the order.

GFSI was damaged in the amount of $414,721.00, and Comfort has refused to reimburse GFSI. GFSI brings suit for damages under Section 2-711 of the UCC (K.S.A. § 84-2-711); breach of express warranty under Section 2-313 of the UCC (K.S.A. § 84-2-313); and breach of implied warranty of merchantability and usage of trade under Section 2-314 of the UCC (K.S.A. § 84-2-314).

In November of 2008, Comfort filed a lawsuit against GFSI in Pakistan.[4] On November 24, 2008, GFSI brought an arbitration action against Zulfiqar in Missouri pursuant to the Master Terms and Conditions agreement. After receiving evidence from both GFSI and Zulfiqar, the Arbitrator stated that "[r]egardless of what Gear believed "Comfort" referred to or represented vis a vis Zulfiqar or other companies represented by Asher Khurram, there is no evidence that "Comfort Knitwears, Ltd." has the same meaning as "Comfort" in this or any other context." The Arbitrator found no genuine dispute that "Zulfiqar and Comfort Knitwears (Pvt), Ltd. are separate legal entities, with different ownership, businesses, locations, bank accounts, financial records, work forces, assets and liabilities." Therefore, the Arbitrator found that GFSI had no claim against Zulfiqar as there was no basis for its claim that Zulfiqar was "legally responsible" for the undertakings and acts of Comfort Knitwear.

---

[4]Plaintiff asserts that Comfort's lawsuit is a sham.

After the Arbitrator issued the ruling on June 5, 2009, Plaintiff filed a lawsuit against Defendant Comfort Knitwears in the District of Kansas. Defendant argues under Fed. R. Civ. P. 12(b)(2) that it is not subject to personal jurisdiction because all of the relevant events as alleged in the Complaint happened outside of Kansas, involve Pakistani law, and it had no reason to anticipate it would be hailed into court in Kansas. In addition, Defendant asserts that under Fed. R. Civ. P. 12(b)(3), Kansas is not the proper forum because the case is currently being litigated in Pakistan where the events occurred and the witnesses are located.

## II. Analysis

### A. Personal Jurisdiction

A plaintiff opposing a motion to dismiss based on lack of personal jurisdiction bears the burden of showing that personal jurisdiction over the defendant is appropriate.[5] In a pre-trial motion to dismiss, such as when the matter is decided on the basis of affidavits and written materials, the plaintiff is only required to make a prima facie showing that personal jurisdiction is proper to avoid dismissal.[6] Once the plaintiff makes a prima facie showing, the defendant must "present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[7]

"The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and 'the plaintiff's prima facie showing is sufficient

---

[5]*Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1227 (D. Kan. 2000) (citing *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[6]*Id.*

[7]*Id.* at 1227 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985))).

notwithstanding the contrary presentation by the moving party.'"[8] "However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."[9] "The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."[10]

In a diversity action, "personal jurisdiction over a nonresident defendant is determined by the law of the forum state."[11] "The proper inquiry is . . . whether the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state and comports with due process requirements of the Constitution."[12] Courts may proceed directly to the due process issue because the Kansas long-arm statute is construed liberally.[13]

### *1. Due Process*

The Due Process Clause allows the exercise of personal jurisdiction over a non-resident defendant "only so long as there exist 'minimum contacts' between the defendant and the forum state."[14] "The 'minimum contacts' standard may be met "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out

---

[8]*Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citations omitted).

[9]*Id.*

[10]*Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).

[11]*Caldwell-Baker Co. v. S. Illinois Railcar Co.*, 225 F. Supp. 2d 1243, 1259 (D. Kan. 2002)*.*

[12]*Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304-05 (10th Cir. 1994).

[13]*Id*. at 1305.

[14]*OMI Holdings*, 149 F.3d at 1090 (citation omitted).

of or relate' to those activities."[15] This involves a two step inquiry: (1) whether "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there;'"[16] and (2) "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'"[17]

### *a. Minimum Contacts*

The minimum contacts inquiry requires the Court to determine "whether the defendant purposefully directed its activities at residents of the forum, and whether the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state."[18] "Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff . . . . [and generally] requires . . . affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state."[19] "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state."[20]

In this case, Plaintiff asserts that Kansas' long-arm statute is applicable, specifically K.S.A. § 60-308(b)(1)(A) and (E), in that Plaintiff contends that Defendant transacted business within the state and entered into a contract requiring performance in whole or in part by either party in this

---

[15] *Id.* at 1091 (quoting *Burger King*, 471 U.S. at 472).

[16] *Benton v. Cameco Corp.*, 375 F. 3d 1070, 1075 (10th Cir. 2004) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[17] *Id*. at 1075-76 (citing *OMI Holdings*, 149 F.3d at 1091)).

[18] *OMI Holdings*, 149 F.3d at 1091 (quotations and citations omitted).

[19] *Rambo v. Am. S. Ins., Co.,* 839 F.2d 1415, 1420 (10th Cir. 1988) (citation omitted).

[20] *Pehr*, 874 F. Supp. at 320 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

state.[21] Plaintiff relies upon several contacts in an attempt to demonstrate that the long-arm statute is applicable and establish minimum contacts by the Defendant. These contacts include: (1) GFSI contacted Defendant in Pakistan through its representative in India who set up a meeting with GFSI Kansas management at Defendant's office in Pakistan to discuss GFSI's needs; (2) GFSI personnel in Kansas sent a salesman sample order to Comfort's sister concern and alter ego, Zulfiqar, in Pakistan and sent the bulk order from Kansas to Comfort in Pakistan; (3) GFSI paid Comfort via wire transfers from its bank in Kansas, which were funded by letters of credit issued in Kansas; (4) Comfort sent multiple emails to GFSI in Kansas concerning piece prices, and other terms, and sent sample sew-outs to Kansas for review and approval by Kansas personnel; (5) GFSI provided access to Comfort to obtain computerized logos and other proprietary information from GFSI's main frame computer in Kansas, which were necessary to complete the project; (6) Comfort and its sister concern/alter ego, Zulfiqar or "Z-Kap," sent sew-out samples to GFSI in Kansas for inspection and approval in Kansas; and (7) "work in progress" was sent by Comfort and Zulfiqar to GFSI in Kansas on a weekly basis during production of the bulk order.

Several of the contacts that Plaintiff relies upon to support personal jurisdiction over Defendant involve contacts that Plaintiff directed toward Defendant in Pakistan. For example, with respect to the initial meeting, GFSI's country manager in India set up the meeting in Pakistan and Plaintiffs went to Defendant's office in Pakistan. As such, this does not indicate that Defendant promoted or transacted business within Kansas.

With respect to the emails, samples, and "work in progress," the evidence demonstrates that some of this correspondence was done by Zulfiqar, and not Comfort. Plaintiff's reference to

---

[21]Plaintiff only argues with respect to specific jurisdiction and not general jurisdiction.

"Comfort" refers collectively to Zulfiqar and Comfort Knitwears. Much of the referenced correspondence does not support personal jurisdiction over Comfort as it is correspondence with Zulfiqar. In addition, several of the emails are between Comfort and GFSI's country representative, Thomas Sosa, in India. Accordingly, they had no relation to transacting business in Kansas nor a substantial connection to Kansas.

Plaintiff relies extensively on a District of Kansas case, *Key Industries, Inc. v. O'Doski, Sellers & Clark, Inc.*,[22] contending that the facts are analogous to this case and supports personal jurisdiction over Defendant. However, *Key* is distinguishable in one major aspect. In that case, the defendant actually traveled to Kansas to discuss and solicit business from the plaintiff.[23] In this case, Plaintiff traveled to Pakistan to solicit work from Defendant, and it involves goods that were to be shipped across the United States. However, the goods were produced in Pakistan. Furthermore, the shipment was sent to Los Angeles, California and not to Kansas. When Khurram came to the United States to inspect the goods himself, he went to California. The Court disagrees with Plaintiff's contention that Defendant should have foreseen that any complaints about the goods manufactured would most likely originate in Kansas, GFSI's home state and headquarters, as Defendant had very few and minor contacts with Kansas.

In sum, the Court finds that the exercise of personal jurisdiction over Defendant is not proper under Kansas' long-arm statute because Defendant neither transacted business within the state nor entered into a contract with a Kansas resident to be partially performed in Kansas. Very little occurred in Kansas, and Plaintiff has not established that Defendant had minimum contacts with

---

[22]872 F. Supp. 858 (D. Kan. 1994).

[23]*Id*. at 861.

Kansas such that Defendant would have reasonably anticipated being haled into court in the State of Kansas.

### b. *Fair Play and Substantial Justice*

Even if Defendant's contacts were sufficient to support specific jurisdiction, fair play and substantial justices indicate that it would be inappropriate for the Court to exercise personal jurisdiction. The determination of fair play and substantial justice "requires a case-specific inquiry into the reasonableness of the exercise of personal jurisdiction over a defendant who has minimum contacts with the forum state."[24] To assess reasonableness, there are five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.[25]

"[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction."[26] In addition, with respect to the first factor, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."[27]

---

[24]*TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007).

[25]*Id.*

[26]*Id.* (citations and internal quotations omitted).

[27]*Id.*

Here, Defendant is located exclusively in Pakistan. It has very few ties to Kansas and the burden on Defendant would be substantial as it appears that their witnesses and evidence is located in Pakistan. In addition, Kansas does not have a strong interest in resolving this dispute because very few events occurred in Kansas. The bulk of the transaction occurred in Pakistan, and Plaintiff took possession of the goods in Pakistan. The discovery that the goods were non-conforming occurred in California after Plaintiff had already taken full possession of them. Although the goods are now in Kansas, the individuals involved in inspecting the goods were either in Pakistan or California. As such, exercising personal jurisdiction over Defendant would offend the traditional notions of fair play and substantial justice.

Accordingly, Defendant's motion to dismiss for lack of personal jurisdiction is granted.[28]

Plaintiff asserts that, in the alternative, Plaintiff should be granted leave to file an Amended Complaint to allege additional details supporting personal jurisdiction and Kansas as the proper forum, as well as adding a claim asserting that the validity of the Master Terms and Conditions Agreement executed by Zulfiqar should be binding on Defendant as the alter ego of Zulfiqar.

Plaintiff has not filed a motion for leave to file an Amended Complaint. Perhaps more importantly, it appears that any such amendment would be futile. Plaintiff asserts that the Master Terms and Conditions Agreement should be binding on Comfort Knitwear as the alter ego of Zulfiqar and that this Agreement demonstrates that Comfort Knitwears expressly consented to the jurisdiction of Kansas. In arbitration, however, the arbitrator found that the agreement was between GFSI and Zulfiqar, and Comfort Knitwears was not a party to the contract. As the Agreement provides that the award of the arbitrator shall be binding and conclusive on all parties, it has been

---

[28] The Court will not address Defendant's forum non conveniens argument as it finds that it lacks personal jurisdiction over Defendant.

conclusively established that Comfort Knitwears was not a party to this Agreement.

Furthermore, a cursory review of the Agreement does not support Plaintiff's position. Plaintiff asks this Court to determine that Comfort Knitwears Ltd. is an alter-ego to Zulfiqar based partially on this Agreement. The Agreement was entered into between GFSI and Zulfiqar Knitting & Processing Mills (Pvt) Ltd. (aka Comfort Kniting) ("Vendor"). However, even if that representation of the parties as to the Agreement indicated an alter ego status, "Comfort Kniting" is not a party to this lawsuit, but rather, Comfort Knitwears (Pvt) Ltd. is the named Defendant. As the Agreement does not even name Comfort Knitwears Ltd., it does not support Plaintiff's position. As such, it appears that amending the complaint would be futile.

**IT IS ACCORDINGLY ORDERED** that Defendant's Motion to Dismiss for Lack of Jurisdiction and Forum Non Conveniens (Doc. 11) is hereby granted.

**IT IS SO ORDERED**.

Dated this 29th day of July, 2010.

    /s  Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE